ELAINE J. GIBBONS *v.* HISTORIC DISTRICT
COMMISSION OF THE TOWN
OF FAIRFIELD
(SC 17846)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued September 21, 2007—officially released March 11, 2008

*Richard H. Saxl*, for the appellant (defendant).

*John F. Fallon*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. This appeal arises from the denial by the defendant, the historic district commission of the town of Fairfield (commission), of the application of the plaintiff, Elaine J. Gibbons, for a certificate of appropriateness for proposed changes to her property. The commission denied the application on the ground that the proposed relocation of an existing outbuilding would damage the historical integrity of Southport Har-

bor. On appeal from the commission's decision, the trial court sustained the plaintiff's appeal. We conclude that the commission's stated reason for its denial is within the authority granted to it in the historic district enabling statutes but that the record lacks substantial evidence to support the commission's stated reason for its decision. Accordingly, we affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The property that is the subject of this appeal is a three bedroom, single-family residence located at 211 Harbor Road, in the Southport Historic District of Fairfield. The plaintiff is the record owner of the property, which is located in a one-half acre residential zone.

The plaintiff's main residence, also known as the "Stokey House," was built circa 1899 in the Queen Anne style of architecture. A contemporary addition was added to the rear of the house sometime before the plaintiff purchased the home. The property fronts on Harbor Road, and the rear abuts the Mill River. Both Harbor Road and the Mill River waterway are public ways.[1] In addition to the main residence, an outbuilding is maintained on the property. The outbuilding sits in the rear of the property, next to the Mill River. The outbuilding is not original to the property and was moved there around 1939. The outbuilding is situated within a flood plain and also is nonconforming as to its location because it is within the mandated setback area.

The residents of Fairfield established the Southport Historic District in 1967[2] pursuant to General Statutes

---

[1] The commission has defined a public way to include, inter alia, streets, roads, sidewalks and waterways such as Southport Harbor.

[2] Section 26-3 of the municipal code of the town of Fairfield provides: "An historic district is hereby established in Southport to be known as the Southport Historic District . . . .

"The Southport Historic District is generally bounded on the north by the southerly line of the New York, New Haven & Hartford Railroad Company,

§ 7-147a et seq. The commission is the municipal agency responsible for reviewing all proposed changes, which would be visible from a public way, to properties within the boundaries of the town's historic districts.[3] The commission has determined that the Southport Harbor area of Fairfield has historic significance "because of its high percentage of landmark quality buildings representing all major nineteenth-century styles. These buildings include churches, commercial buildings, institutional buildings and residences . . . . This unusually large number of noteworthy buildings reflects Southport's nineteenth-century affluence due to shipping and specialized agriculture (i.e., onion trade)." Historic District Commission, Town of Fairfield, Historic District and Properties Handbook (1991) p. 13 (commission handbook).[4] The plaintiff's residence is listed in the commission handbook and is subject to the authority of the commission.[5] Id., p. 16.

The plaintiff's husband, Robert Gibbons, filed an initial application for a certificate of appropriateness with the commission on March 23, 2005. The parties agree that the proposed addition and alterations to the main residence required the plaintiff to obtain a certificate

---

on the south by the Mill River and Southport Harbor, on the west by Old South Road, including both sides, and on the east by Rose Hill Road, including both sides, and Church Street . . . ." (Internal quotation marks omitted.)

[3] There are two other established historic districts within Fairfield: the Old Post Road Historic District, which was established in 1963, and the Greenfield Hill Historic District, which was established in 1967.

[4] General Statutes § 7-147c (e) provides: "The historic district commission shall adopt rules of procedure not inconsistent with the provisions of this part. The commission may adopt regulations not inconsistent with the provisions of this part to provide guidance to property owners as to factors to be considered in preparing an application for a certificate of appropriateness."

Pursuant to this provision, the commission has promulgated a handbook defining the historic districts established within Fairfield and explaining its regulations and procedures.

[5] The commission handbook lists the historic homes within the boundaries of the Southport Historic District and includes 211 Harbor Road. Commission Handbook, supra, p. 16.

of appropriateness under the statutory provisions governing historic districts. See General Statutes § 7-147a et seq. The application proposed lifting the outbuilding and attaching it to the main house. Additions and alterations to the residence were also proposed, and an exterior deck was contemplated.

On April 14, 2005, the commission conducted a public hearing on the application. Both David Parker, the plaintiff's architect, and Sharon Klammer, a representative of the Sasquanaug Association, testified at the hearing. Following the public hearing, the commission voted to deny the application, stating that "the massing of the new addition is inappropriate and the new addition is not in harmony with the immediate neighborhood," as reasons for its denial. In response to the commission's denial, the plaintiff filed a revised application for a certificate of appropriateness on April 20, 2005.[6] The amended proposal sought permission to "[r]emove modern addition and deck of existing house; lift, relocate and renovate outbuilding, with stone foundation and terrace, and connect to the main house; construct bay and miscellaneous window alterations on existing main house."

The commission held a public hearing on the revised application on May 12, 2005. The plaintiff, through her representative and architect Parker, informed the commission that the amended proposal responded to the commission's concerns, as expressed at the earlier hearing.[7] Parker explained that, "we reflected on all

[6] The commission subsequently amended its decision on the initial application at the May 12, 2005 public hearing on the revised application. The initial resolution was "amended to indicate that the commission had not intended to deny the portion of the application relating to the [addition of a] bay [window]."

[7] The commission noted in its brief to this court that "[t]he original application sought to move the outbuilding out of the flood plain, raise it up, and attach it to the rear of the house by means of an enclosed breezeway in order 'to maintain its integrity as an outbuilding.' . . . The stone foundation, the heavy timber frame, and the vertical siding that the outbuilding now

your comments and suggestions and have made modifications with respect to each and every one of them." Klammer and a neighbor, Caroline Pech, testified in opposition of the application. Both Klammer and Pech, as well as the commission, discussed the size or massing of the building that would result from the proposed changes. The commission's deliberative session, however, focused not on the massing but on the location of the outbuilding, and the impact of moving the building on Southport Harbor. Following its deliberations, the commission again voted to deny the revised application. The commission's stated reason for denial was *"relocating the outbuilding [would] damage the historic integrity of Southport Harbor."* (Emphasis added.)

The plaintiff appealed to the trial court from the commission's denial of the revised application. The trial court sustained the plaintiff's appeal on the grounds that the "reason stated by the commission finds no support in the record, and is not a valid exercise of the commission's powers." The trial court found that: "[the] commission rendered an arbitrary decision, based [on] subjective criteria [that] bear no relationship to the plaintiff's building, or its architectural features"; "[t]he reason given . . . bears no relationship to the architectural or historic features of other residences in the area"; "the reason given [was] beyond the scope of the

has would be continued, and the outbuilding 'would be painted a different color than the main house.'" At the hearing on the initial application, one commissioner described the proposal as disguising the outbuilding in the building and proposed that, "if [the plaintiff] really wanted to try and protect the identity of the outbuilding . . . [she] would separate it a little . . . more . . . and make it look a little more like an outbuilding rather than a great room and big addition to the back of the house." The revised application proposed that, instead of having the breezeway connect the outbuilding to the house, it would be attached "by a stair connection that actually recesses back to create a visual separation or gap between the old house and the outbuilding."

commission's authority to regulate property rights"; and the plaintiff's revised application had "met the objections stated in response to the initial proposal . . . ." The commission appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The commission first claims that the trial court improperly concluded that the stated reason for denial of the plaintiff's revised application was beyond the scope of its authority under the historic district statutes. The commission argues that the historic district enabling statutes clearly express the "legislative purpose to preserve historic places, as well as historic buildings . . . ." (Internal quotation marks omitted.) The plaintiff responds that the authority granted to historic district commissions in reviewing applications for certificates of appropriateness in General Statutes § 7-147f (a) is limited to considering the relationship of the "proposed architectural features to other buildings and structures in the neighborhood." We agree with the commission.

We begin with the proper standard of review. A determination of whether a historic district commission's denial of a certificate of appropriateness is a proper exercise of the authority granted to it by statute presents a question of law over which we exercise plenary review. See, e.g., *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, 283 Conn. 369, 374, 926 A.2d 1029 (2007).

To resolve this issue on appeal, we must look to the powers delegated by the legislature to municipalities in the historic district enabling statutes. General Statutes §§ 7-147a through 7-147c permit municipalities to establish both historic districts and historic district commis-

sions to oversee district preservation and protection.[8] We have concluded that these statutes are a valid exercise of the state's police power to promote the general welfare of the public. *Figarsky* v. *Historic District Commission*, 171 Conn. 198, 207–10, 368 A.2d 163 (1976).

The relevant statutory provisions, in the present case, pertain to the powers granted to historic district commissions to regulate private property, specifically the power to approve or disapprove changes a property owner proposes to make. General Statutes § 7-147d (a) provides that, once a historic district is established, "[n]o building or structure shall be erected or altered within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the historic district commission and approved by said commission." The parties agree that the plaintiff's proposed renovations and relocation of the outbuilding constituted "alterations" as defined by statute.[9]

We turn next to the statutory provisions that define appropriateness and guide historic district commissions in passing on applications for certificates of appropriateness. General Statutes § 7-147a (a) provides in relevant part that " 'appropriate' " means "not incongruous with those aspects of the historic district which the historic district commission determines to be historically or architecturally significant." Furthermore, § 7-

---

[8] General Statutes § 7-147a (b) provides in relevant part: "Any municipality may . . . establish within its confines an historic district or districts to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of the distinctive characteristics of buildings and places associated with the history of or indicative of a period or style of architecture of the municipality, of the state or of the nation."

[9] General Statutes § 7-147a (a) provides in relevant part: " 'Altered' means changed, modified, rebuilt, removed, demolished, restored, razed, *moved* or reconstructed . . . ." (Emphasis added.)

147f outlines the considerations in determining appropriateness and instructs historic district commissions, in their deliberations, to "act only for the purpose of controlling the erection or alteration of buildings, structures or parking *which are incongruous with the historic or architectural aspects of the district*." (Emphasis added.) General Statutes § 7-147f (b). Finally, we note that § 7-147f (a) provides examples of the types of considerations that a commission should weigh in passing on an application. The statute directs commissions to "consider, *in addition to any other pertinent factors, the historical and architectural value and significance*, architectural style, scale, general design, arrangement, texture and material of the architectural features involved and the relationship thereof to the exterior architectural style and pertinent features of other buildings and structures in the immediate neighborhood." (Emphasis added.) General Statutes § 7-147f (a).

The commission denied the plaintiff's application on the ground that relocating the outbuilding would damage the historical integrity of Southport Harbor. The trial court observed that this rationale "bears no relationship to the architectural or historic features of other residences in the area," and was "not germane to the 'exterior architectural features' which the commission is authorized to regulate . . . ." The court further observed that the commission's decision was based on "subjective criteria [that] bear no relationship to the plaintiff's building, or its architectural features." We read the trial court's decision to suggest that the historic value or significance that the commission properly may seek to preserve or protect is limited to that of the building or structure being altered or to architectural features of nearby buildings and structures. Although that is a test, we conclude that it is not the only test and that the trial court's conclusion was too narrow.

Our reading of the statute leads us to conclude that the commission additionally may consider the relationship of a building or structure to a place of historic significance.

We note that when the Southport Historic District was created, the historic district study committee, which subsequently was replaced by the commission, determined that Southport Harbor and the surrounding neighborhood was historically and architecturally significant. The commission handbook clearly notes the variety of nineteenth century architectural styles exemplified in the district and that the presence of such buildings is linked to the affluence in the area during the same time period due to shipping and the specialized onion trade. The map of the district displays that its boundaries extend into Southport Harbor. Commission Handbook, supra, p. 12.

The commission's overall responsibility is to determine whether the proposed change is appropriate. Section 7-147f (a) instructs the commission to consider the enumerated factors, *as well as all other pertinent factors*, in determining whether the changes will be "incongruous with those aspects of the historic district which the historic district commission determines to be historically or architecturally significant." General Statutes § 7-147a (a). The description of the Southport Historic District's significance clearly indicates that the commission has determined that Southport Harbor and the waterfront, including the plaintiff's property, are historically significant aspects of the neighborhood.

Therefore, we conclude that the commission's stated reason is within its authority and articulates, albeit summarily, a proper consideration of the historic value and significance of the plaintiff's outbuilding, in its present location, and the impact that its proposed relocation

would have on the immediate neighborhood on the Mill River portion of Southport Harbor.

## II

We now consider the commission's claim that the evidence in the record is sufficient to support its determination that the relocation of the outbuilding would damage the historical integrity of Southport Harbor. We begin with the appropriate standard of review.

The controlling question for a trial court reviewing the decision of a historic district commission is "whether the historic district commission ha[s] acted . . . illegally, arbitrarily and in abuse of the discretion vested in it." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 853, 937 A.2d 39 (2008); accord *Figarsky* v. *Historic District Commission*, supra, 171 Conn. 202. Whether the trial court properly made this determination presents a question of law subject to our plenary review. See, e.g., *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485, 815 A.2d 1118 (2003). The plaintiff has the burden of proving that the commission has acted unreasonably and in abuse of its discretion. *Figarsky* v. *Historic District Commission*, supra, 212. The reviewing court must examine the record to determine whether it reveals *substantial evidence* that supports the reasoning and ultimate decision of the historic district commission.[10] *Felician Sisters of St. Francis of Connecticut,*

[10] We note that the commission stated in its brief that we should review the record to determine if its decision was reasonably supported by the record, and the plaintiff stated that the proper standard was substantial evidence. As we recently observed in *Felician Sisters of St. Francis of Connecticut, Inc.*, administrative decisions of historic district commissions should be reviewed to determine whether they are supported by substantial evidence in the record. *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, supra, 284 Conn. 853–54 and n.18. The commission's "decision to deny the [plaintiff's] application for a certificate of appropriateness on the basis of its consideration and application of the statutory criteria is administrative . . . in nature." Id., 853–54 n.18, citing

*Inc.* v. *Historic District Commission,* supra, 853–54 and n.18; see also *Heithaus* v. *Planning & Zoning Commission,* 258 Conn. 205, 223–24, 779 A.2d 750 (2001). "In an appeal from the decision of a . . . [commission], we therefore review the record to determine whether there is factual support for the [commission's] decision . . . . Should substantial evidence exist in the record to support any basis or stated reason for the . . . commission's decision, the court must sustain that decision." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission,* supra, 853. It is not the function of a reviewing court to " 'retry the case or substitute its judgment for that of the agency' "; *Smith* v. *Zoning Board of Appeals,* 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994); but to determine "whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) *Gevers* v. *Planning & Zoning Commission,* 94 Conn. App. 478, 483, 892 A.2d 979 (2006).

Our case law establishes that judicial review of administrative decisions is deferential. A statutory right to appeal, however, must be meaningful. "[A] court cannot take the view in every case that the discretion exercised by the local [agency] must not be disturbed, for if it did the right of appeal would be empty . . . ." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission,* supra, 284 Conn. 854; accord *Suffield Heights Corp.* v. *Town Planning Commission,* 144 Conn. 425, 428, 133 A.2d 612 (1957).

Finally, we have recognized that members of a municipal board or commission "are entitled to take into

---

*Heithaus* v. *Planning & Zoning Commission,* 258 Conn. 205, 217, 779 A.2d 750 (2001).

consideration whatever knowledge they acquire by personal observation." *Dubiel* v. *Zoning Board of Appeals,* 147 Conn. 517, 522, 162 A.2d 711 (1960). We do not expect "laymen serving gratuitously on local administrative bodies [to] prepare with meticulous detail a finding of facts and ultimate conclusions after the manner of courts of law." Id. In the case of historic district commissioners, however, we note that the enabling statute gives them the power not only to determine whether a proposed activity is appropriate but also to determine the historic or architectural underpinnings by which appropriateness is measured. To be capable of meaningful review on appeal, these determinations must be based on actual knowledge and factual evidence, not solely on personal beliefs or aesthetic preferences. See *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 540, 271 A.2d 105 (1970) (sustaining appeal of commission decision because reason that "the commission gave . . . [was] the [a]esthetic effect of the [apartment] complex in relation to the existing neighborhood and the town in general" [internal quotation marks omitted]); see also Connecticut Historical Commission, Handbook for Connecticut Historical District and Historic Properties Commissions (1988) p. IV-6 ("[A] commission is assumed to be sufficiently knowledgeable in its field to determine what are the historic and architectural aspects or character of an historic district or historic property, and to recognize what would be incongruous. A commission's judgment must be based on sound knowledge of the architectural characteristics of an historic district or historic property. *Denial of an application 'because I don't like it' is not persuasive legally and will not withstand an appeal."* [Emphasis added.]).

## A

Prior to addressing whether there is substantial evidence in the record to support the commission's decision, we must determine whether our review is limited

to the commission's stated reason for denying the plaintiff's application. The commission claims that the record of the May 12, 2005 hearing indicates that the inappropriate massing of the proposed structure was still a concern in considering whether to grant the plaintiff's revised application. The commission's stated reason for denying the revised application, however, did not mention the massing of the proposed structure. The plaintiff responds that the commission "stated one . . . reason for its denial. It cannot be heard now [on] appeal . . . to argue that there was a basis in the record to support another reason for denial that was not articulated." Thus, we are confronted for the first time in this appeal with the question of whether our review of a historic district commission's decision is strictly limited to whether there is substantial evidence in the record to support its *stated* reason or reasons for denying an application for a certificate of appropriateness. We conclude that it is.

We previously have likened the nature of the historic district legislation to that of zoning laws. See *Gentry* v. *Norwalk*, 196 Conn. 596, 608, 494 A.2d 1206 (1985). In both contexts, the legislature has provided that a commission should state the reasons for its decision. General Statutes § 8-3c (b) governs special permits, exceptions and exemptions in zoning and provides in relevant part that, "[w]henever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. . . ." General Statutes § 8-7 governs zoning appeals and provides in relevant part that, "[w]henever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property . . . it shall state upon its records the reason for its decision . . . ." Similarly, the provision of the historic district statutory scheme governing hearings on applications for certificates of appropriateness pro-

vides in relevant part that, "[w]hen a certificate of appropriateness is denied, the commission shall place upon its records and in the notice to the applicant the reasons for its determination . . . ." General Statutes § 7-147e (b). Prior to this decision, we had not expressly held that the law governing the scope of review in appeals from decisions of zoning commissions applies to appeals from decisions of historic district commissions. As we already noted, we have applied the well settled substantial evidence standard of review used in the context of zoning appeals to cases involving historic district commissions. See *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, supra, 284 Conn. 853–54 and n.18. Further, in light of the similarity in statutory language providing that both zoning and historic district commissions shall state the reasons for their decisions, as well as the fact that both are charged with regulating private use of property in accordance with their enabling legislation, we conclude that, in deciding appeals from historic district commissions, reviewing courts are limited to determining whether the reason or reasons stated by the commission are supported by substantial evidence in the record.

In zoning cases, we have held that, when "a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate [on] other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." (Internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 142, 653 A.2d 798 (1995); see also *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995); *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513, 636 A.2d 1342 (1994); *First Hartford Realty Corp.* v.

*Plan & Zoning Commission,* 165 Conn. 533, 543, 338
A.2d 490 (1973); *DeMaria* v. *Planning & Zoning Com-
mission,* supra, 159 Conn. 541. Notwithstanding the
statutory language providing that a zoning commission
shall state its reasons for a decision, we also long have
held that when a commission gives no reason for its
decision, "the trial court must search the entire record
to find a basis for the commission's decision . . . ."
*Parks* v. *Planning & Zoning Commission,* 178 Conn.
657, 662, 425 A.2d 100 (1979); see also *Bloom* v. *Zoning
Board of Appeals,* supra, 208; *Protect Hamden/North
Haven from Excessive Traffic & Pollution, Inc.* v. *Plan-
ning & Zoning Commission,* 220 Conn. 527, 544, 600
A.2d 757 (1991).[11]

In 1989, this court affirmed, in a per curiam opinion,
a decision of the Appellate Court that held that a
reviewing court should search the record, not only
when a zoning commission states no reason for its
decision but also when a commission provides *inade-
quate reasons.* See *Stankiewicz* v. *Zoning Board of
Appeals,* 211 Conn. 76, 77–78, 556 A.2d 1024 (1989),
aff'g 15 Conn. App. 729, 546 A.2d 919 (1988). In *Stankie-
wicz,* the inadequate reason was one that the trial court
found to be unsupported by the evidence in the record.
See *Stankiewicz* v. *Zoning Board of Appeals,* supra, 15
Conn. App. 731–32. Nevertheless, the trial court contin-
ued to search the record and concluded that there was
evidence to support another reason for the zoning
board's granting of the variances at issue. See id., 731.

The commission in the present case does not rely on
*Stankiewicz* in asking this court to go beyond its stated
reason and to search the record to determine whether
there is evidence that massing was still a concern and

---

[11] We note that, in *Gagnon* v. *Inland Wetlands & Watercourses Commis-
sion,* 213 Conn. 604, 605, 569 A.2d 1094 (1990), we adopted this rule for
appeals from land use decisions of inland and wetlands commissions, as well.

a reason for the denial of the plaintiff's revised application. In light of our conclusion in part II B of this opinion, however, that the commission's stated reason is not supported by substantial evidence and, thus, possibly "inadequate" under *Stankiewicz*, we conclude that we must resolve the apparent conflict between *Stankiewicz* and the cases limiting review to a commission's stated reason. See R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 33.6, p. 258 ("cases are conflicting on whether the trial court should search the record for additional reasons if the reasons given are inadequate"); see also id., p. 258 n.10 (citing cases). Our research reveals no Supreme Court case since *Stankiewicz* that rejected a commission's stated reason as inadequate and continued to search the record for *any* substantially supported reason to justify a commission's action. Rather, this court has continued to apply the traditional rule that when a reason is given, we should not search beyond it. E.g., *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 142; *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 513. We reaffirm that this is the appropriate scope of review for municipal land use appeals and appeals from decisions of historic district commissions. "When an administrative agency specifically states its reasons, the court should go no further because it could reasonably be inferred that this was the extent of its findings. To go beyond those stated reasons invades the factfinding mission of the agency by allowing the court to cull out reasons that the agency may not have found to be credible or proven." *Fonfara* v. *Reapportionment Commission*, 222 Conn. 166, 206 n.12, 610 A.2d 153 (1992) (*Berdon, J.*, dissenting). To the extent that our decision in *Stankiewicz* conflicts with this principle, it is hereby overruled. Thus, our review of the commission's decision is limited to whether there is substantial evidence in the record to

support the conclusion that relocating the plaintiff's outbuilding will damage the historic integrity of Southport Harbor.

## B

The commission argues that the record contains substantial evidence, namely, the testimony of Klammer, a representative of a neighborhood group opposing the plaintiff's revised application, and Pech, the plaintiff's neighbor, that the proposed addition would be "definitely noticeable from the harbor" and that moving the outbuilding would "compromise the . . . balance between the two structures and significantly detract from the overall appearance of the waterfront which is so critical to the essence of Southport." (Internal quotation marks omitted.) The commission also argues that its determination was not, as the trial court concluded, based entirely on aesthetic considerations but "on a determination that the proposed attachment of the outbuilding to the historic dwelling would have impaired the historic character and appearance . . . of an historic place forming an integral part of the Southport Historic District . . . ." The plaintiff argues in response that "[n]owhere in the record is there any reference whatsoever or assertion that the outbuilding is in any way historic." We conclude that the commission's stated reason for denial is not supported by substantial evidence in the record, and, thus, its denial of the plaintiff's application was arbitrary and unreasonable.

We first note that the commission's characterization of its action is, in part, misleading. In its brief, the commission argues that, at the close of the May 12, 2005 hearing, it determined "that the *proposed attachment of the outbuilding to the historic dwelling would have impaired* the historic character and appearance . . . of an historic place forming an integral part of the

Southport Historic District." (Emphasis added.) A review of the record reveals, however, that the commission was concerned with the *existing location* of the outbuilding and the impact that relocating it would have on Southport Harbor and not, as it suggests on appeal, with the impact of the proposed attachment of the outbuilding to the main house. For example, one commissioner observed that he thought that "the building, as it exists, which includes *its location*, is important to the historic district," that he could see the outbuilding "from the roads off of Sasco Hill from the golf course," and that he "like[d] it." (Emphasis added.) Additionally, we note that the stated reason for denial makes no reference to the main house and only provides that moving the outbuilding will damage the historic integrity of Southport Harbor. We now address the issue of whether there is adequate support for such a determination.

The record in this case does not contain substantial evidence to support the commission's determination that either the current location of the plaintiff's outbuilding or the design of the building itself is historically significant or has historical value because of its relationship to Southport Harbor. Cf. *First Church of Christ, Scientist* v. *Historic District Commission*, 46 Conn. Sup. 90, 91–93, 95–96, 738 A.2d 224 (1998) (commission relied on site visits, photographs and proposed changes to roofline, trim and siding that was visible from public way), aff'd, 55 Conn. App. 59, 737 A.2d 989, cert. denied, 251 Conn. 923, 742 A.2d 358 (1999); *Bellevue Shopping Center Associates* v. *Chase*, 574 A.2d 760, 763–64 (R.I. 1990) (zoning board relied on expert testimony and impact of proposed design on historic and architectural value of surrounding area). In the present case, only photographs of the *then-existing* view of the outbuilding from the water were presented. Furthermore, no documentation evidencing the historic importance of

the outbuilding was presented to or introduced by the commission. No expert testimony was offered as to the historic significance of the outbuilding.[12] Rather, the testimony that was offered as to the issue of historic significance disputed the notion that the location of the outbuilding or its design was at all historically important. Parker, the plaintiff's architect, testified at the May 12, 2005 hearing that "Louise Higgins, who is the historian of Southport, often says that . . . so many of the buildings in Southport have been moved . . . and it's throughout the history of the village they've been moved. . . . [T]his building . . . was moved in many people's own lifetime and renovated at that time . . . . [I]t's not historic in its present location . . . . [W]e know definitely it was not here . . . ." Parker further noted that the outbuilding was not "mentioned in the . . . nomination when the [historic] district was created." We note that the description of the Southport Historic District in the commission handbook does not mention that similar waterfront buildings were present historically or suggest that the plaintiff's outbuilding is characteristic of a period that the commission has deemed historically significant.

One commissioner noted that she reviewed older maps of Southport to see when the outbuilding appeared and concluded that it was not on some maps and on others. It is undisputed, however, that the outbuilding was not on the property until the end of the 1930s. Although the commissioner observed that it had been there for "seventy odd years" and that "it begins to feel more established than one might first think," that is the extent to which the commission investigated any external documentation concerning whether the

---

[12] We do not suggest that expert testimony is required in considering applications for certificates of appropriateness, but testimony related to historic value or significance must be based on actual knowledge rather than belief or personal preference.

outbuilding itself has historic significance to the neighborhood. Furthermore, although the standards of the secretary of the Department of the Interior, which the commission officially has adopted,[13] provide that "those changes that have acquired historic significance in their own right shall be retained and preserved," no evidence was presented to warrant a finding that the location of the outbuilding in relation to the harbor or the design of the outbuilding itself had acquired historic significance.

The record of the commission's deliberative session reveals that its decision was not based on substantial evidence. Several commissioners acknowledged that they did not know for what purpose the outbuilding was ever used and that they were not certain whether it had any historic significance. One commissioner noted: "I *believe . . . without a lot of basis and fact,* that this outbuilding, in its particular place, is of some significance, both *perhaps historically, perhaps not,* but also to the . . . streetscape and the sort of historical nature of the village."[14] (Emphasis added.) Although one commissioner observed that the specialized agricultural history in the area, i.e., the onion trade, involved small barns located on the water for shipping of the harvested onions, no evidence was introduced that this particular outbuilding was used for that purpose, nor

---

[13] According to the commission handbook, the commission officially adopted these standards in 1990 for "the [r]ehabilitation of [h]istoric [b]uildings." Commission Handbook, supra, preface.

[14] In addition, an exchange between two commissioners elicited the following dialogue:

"[First Commissioner]: . . . I think the fundamental issue is *whether . . . this little building is of historical significance to the . . . historic district.*

* * *

"I guess I'd still argue that . . . to me, *its significance is tied up very much in being a waterfront. It's like boathouses.* I think that's really what it comes down to.

"[Second Commissioner]: . . . [I]t was never a boathouse.

"[First Commissioner]: . . . *I don't know what it was.*" (Emphasis added.)

was any evidence introduced to suggest that the outbuilding was architecturally similar to those that formerly were used for such a purpose or even moved to the plaintiff's property when the onion trade was active in Southport. In fact, the commissioner making this observation admitted to "romanticizing" as he brought up the topic of the onion barns on the waterfront.[15]

We already have noted that the opportunity to appeal from a historic commission's decision must be meaningful. There must be a detailed enough record for a reviewing court to make a determination of whether the commission's decision was supported by substantial evidence. In the absence of such sufficient detail, appellate review of commission decisions would be an empty undertaking. In the present case, the record does not contain substantial evidence to support the commission's determination that relocating the outbuilding would damage the historical integrity of Southport Harbor. The record reveals no objective determination that the outbuilding has any historic significance of its own or in relation to the harbor. No witness at the public hearing, nor any commissioner, could identify the original purpose for which the building was moved to the property or to what use it had been put over time, other than as a garage.

The commission directs us to the testimony of Klammer and Pech in support of its claims. We conclude that the commission's reliance on such testimony as proof of the historic value or significance of the outbuilding was improper. See *Felician Sisters of St. Fran-*

---

[15] The commissioner stated in relevant part: "I see it as the last remnant . . . of Southport being a harbor as opposed to being a . . . waterfront development. . . . [I]f you move that back, every house is going to be sort of equidistant from the water . . . whereas . . . it's a remnant of the— there used to be onion barns down on the water. People would farm onions in Green Farms in Southport and store the onions in the barns and have a skiff out on the water, and they'd pull their boats up to it and, I mean, I'm romanticizing right now . . . ."

*cis of Connecticut, Inc.* v. *Historic District Commission,* supra, 284 Conn. 860–62 (commission's reliance on testimony of nearby landowners was improper when statements lacked factual support). First, Klammer did not mention historic value or significance but only spoke to the size of the proposed structure and the impact on the view from the water. Second, Pech testified about the relationship between the outbuilding and the main house. She testified in relevant part: "The two are just nicely balanced on the property and that will be gone and that will all be house . . . . [I]t's just taking that beautiful—and *maybe it doesn't have . . . historic significance. It's the charm, the appeal,* that was just nestled there on the waterfront right on the harbor . . . . [I]*t's so charming,* and there's not a lot of that on that harbor . . . . [T]o take that away and morph it into the house and try to—it makes one massive structure and takes away from the balance." (Emphasis added.) Pech admitted having no knowledge of the historic significance of the outbuilding and even questioned whether it was historic at all. This testimony does not amount to substantial evidence to support the commission's decision.

Finally, to be a valid exercise of the state's police power, regulation of private property must be reasonably related to a substantial public purpose. The historic district statutes define the public purposes served by historic preservation. According to General Statutes § 7-147a (b), the emphasis in historic preservation and protection is "to promote the educational, cultural, economic and general welfare of the public . . . ." We fail to see how prohibiting the relocation of the outbuilding promotes any of those valid police power objectives. The record contains no factual support for the historic significance of the outbuilding in relation to the district. Rather, the commissioners' remarks at the hearing are indicative of the aesthetic nature of their concerns. One

commissioner referred to the outbuilding as an "iconic figure," another commissioner expressed a "*feel[ing]* that the [out]building is an important characteristic to the historic landscape of Southport village"; (emphasis added); and another noted that it is characteristic of "what we *like*" about the view from the water, and observed the "aura of charm" that it lends to the waterfront. (Emphasis added.) We conclude that the commission's denial was based on aesthetic preferences rather than on an evidence based determination of the impact that the proposed changes would have on the *historical* aspects of the Southport Harbor area of the Southport Historic District. See General Statutes § 7-147f (b). The commission's denial of the plaintiff's application, therefore, amounted to an unreasonable and arbitrary exercise of its authority and constituted an abuse of its discretion.

The commission's final claim on appeal is that the trial court improperly concluded that the plaintiff's revised application met all of the commission's concerns regarding the "massing" of the proposed structure. Because we have concluded that the trial court correctly limited its review of the record to the commission's stated reason for denying the plaintiff's revised application, we need not address this issue.

The judgment is affirmed.

In this opinion the other justices concurred.