******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JENNIFER L. STARBLE *v.* INLAND WETLANDS
COMMISSION OF THE TOWN OF
NEW HARTFORD ET AL.
(AC 39332)

Alvord, Bright and Lavery, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decision by the defendant
Inland Wetlands Commission of the Town of New Hartford granting the
application of the defendant applicants, R and L, for a permit to build
a driveway on certain of their real property located partially in a wetlands
area. The trial court rendered judgment, dismissing the plaintiff's appeal,
from which the plaintiff, on the granting of certification, appealed to
this court. The plaintiff claimed that the trial court incorrectly concluded
that the requirement of presenting feasible and prudent alternatives
under statute (§ 22a-41 [a] [2] and [b] [2]), and the applicable regulation
(§ 7.5) of the commission was directory rather than mandatory, and that
the trial court improperly applied the substantial evidence test to review
the record of the proceedings before the commission. *Held:*

1. The trial court improperly concluded that the applicants' burden of proof
   to present feasible and prudent alternatives under § 7.5 was directory
   rather than mandatory: in making that determination, the trial court
   failed to consider the effect on § 7.5 of § 22a-41 (b), which places the
   burden of proof on the applicant to present feasible and prudent alterna-
   tives, as it was clear from the applicable regulation (§ 1.5) of the commis-
   sion that § 7.5 (f), which sets forth application requirements for permits,
   operates in consonance with § 22a-41 (b), and even if the requirements
   to produce drawings of alternatives was directory, that determination
   did not alter an applicant's burden to present feasible and prudent
   alternatives, as an applicant's burden to prove the absence of a feasible
   and prudent alternative was reflective of the legislature's intent to pro-
   tect the inland wetlands and, thus, a matter of substance; accordingly,
   because the regulations require the commission to grant or deny applica-
   tions pursuant to the statutory scheme of § 22a-41, § 7.5 (f), which
   necessarily implements the burden of proof set forth in §22a-41 (b),
   deals with a matter of substance and is, therefore, mandatory and not
   directory, and the absence of express language invalidating noncompli-
   ance of § 7.5 (f) did not militate against the mandatory nature of the
   requirement that the applicants present feasible and prudent alter-
   natives.

2. The trial court improperly applied the substantial evidence test to review
   the record of the proceedings before the commission for substantial
   evidence as to whether the applicants had proven that no feasible and
   prudent alternative existed; in light of the fact that the commission stated
   its reasons for approving the application and supported its decision with
   several explicit findings, it was improper for the trial court to search
   the record and go beyond those stated reasons even though they were
   contrary to settled law and the court found them to be inadequate,
   which invaded the fact-finding mission of the commission, as our
   Supreme Court has rejected such an approach of reviewing the record for
   evidence in support of something other than the commission's explicit
   findings and has limited review of the record only to the specifically
   stated reasons of an agency.

Argued January 3—officially released July 10, 2018

*Procedural History*

Appeal from a decision by the named defendant grant-
ing the application of the defendant Roger J. Schiffert
et al. for a permit to conduct certain regulated activities
within a designated wetlands area, brought to the Supe-
rior Court in the judicial district of Litchfield and tried to
the court, *Pickard, J.*; judgment dismissing the appeal,

from which the plaintiff, on the granting of certification, appealed to this court. *Reversed; judgment directed.*

*Jonathan M. Starble*, for the appellant (plaintiff).

*John R. Williams*, with whom, was *David M. Cusick*, for the appellees (defendant Roger J. Schiffert et al.).

*Opinion*

LAVERY, J. The plaintiff, Jennifer L. Starble, appeals from the judgment of the Superior Court dismissing her appeal from the decision of the Inland Wetlands Commission of the Town of New Hartford (commission) granting Roger J. Schiffert and Linda Schiffert's (applicants)[1] application for a permit to build a driveway across wetlands on their property. On appeal, the plaintiff contends that the court incorrectly (1) concluded that the requirement of presenting feasible and prudent alternatives under General Statutes § 22a-41 (a) (2) and (b) (2), and under § 7.5 (f) of the Town of New Hartford Inland Wetlands and Watercourses Regulations (regulations) was directory rather than mandatory, and (2) applied the substantial evidence test to review the record of the proceedings before the commission.[2] We agree with both claims, and, accordingly, reverse the judgment of the Superior Court.[3]

The following facts are relevant to this appeal. The applicants' property is a 25.9 acre parcel of land on the eastern side of Town Hill Road in New Hartford. The property has only 305 feet of road frontage, remains narrow for approximately 1000 feet and broadens to over 650 feet in width at its far eastern end. The property also includes a watercourse and wetlands. On July 2, 2014, the applicants filed an application with the commission seeking a permit to build a single-family dwelling (house) at the eastern end of the property, with a driveway that would run through a section of the wetlands. The commission determined that the proposed plan could significantly impact the wetlands and held public hearings on the application. Thereafter, the applicants submitted revised plans that reduced the area of disturbance to the wetlands from 3400 square feet to 3015 square feet. At a public hearing on October 1, 2014, the plaintiff, along with other abutting owners, not party to this appeal, objected to the applicants' proposed plan.[4] The plaintiff presented to the commission a report from Marc Goodin, an engineer, stating that the proposed plan would disturb the wetlands and that there were other feasible and prudent alternatives that the applicants had failed to present to the commission. The report also stated that "the most obvious feasible and prudent alternative" was to build the house on the western section of the property. Because the western section was close to the road, the report stated, it would obviate the need to build a driveway through the wetlands. Goodin, however, was not available to testify at the public hearing.

The commission also heard testimony from three expert witnesses, David Whitney, Tom Pietras, and Clint Webb, on behalf of the applicants. All three experts stated that constructing a house on the eastern section of the property was prudent because that section had better draining soils for the septic system and gentler

slopes that required fewer cut and fill operations. Webb, the expert qualified to evaluate wetlands and watercourse impacts, concluded that the proposed activities would have no or de minimis impact on the function of the wetlands resources on the property. As to the alternative proposed by the plaintiff's expert, Webb testified that building a house on the western side of the property required significant cutting and filling as well as a cut into the ground water that fed the wetlands. He also testified that building on the western side would be more expensive, would require a more substantial area for a septic system than on the eastern side and would result in more storm water runoff. Webb therefore concluded that building on the western side as the plaintiff had suggested, although feasible, would not be prudent.

The commission found the testimony of the applicants' experts credible and adopted their conclusions as to the impact of the proposed construction on the wetlands. The commission then approved the application, making the following relevant findings: "The central claim of the intervenors is that a feasible and prudent alternative exists, namely, construction of the single-family dwelling on the western, rather than eastern, portion of the property, obviating the need for a wetlands crossing. . . . The intervenors have failed to prove that [the] applicants are proposing activities that are reasonably likely to unreasonably pollute, impair, or destroy the public trust in the air, water, or other natural resources of the State of Connecticut. . . . Even if the intervenors proved that the proposed activities will unreasonably pollute, impair or destroy the public trust in the air, water, or other natural resource of the State of Connecticut, they have failed to prove that requiring the applicants to develop on the western portion of the property is a feasible and prudent alternative to the proposed activities." The commission thereafter approved the applicants' plan.

The plaintiff appealed to the Superior Court claiming that the commission had (1) misinterpreted and misapplied the feasible and prudent standard under § 22a-41, and under §§ 7.5 (f) and 10.3 of the regulations, and (2) failed to follow reasonable and acceptable procedures for deliberations, voting and use of legal opinions during deliberations. As to the first claim, the Superior Court concluded that although the commission initially had been advised of the incorrect standard, that advice subsequently was corrected and the commission properly applied the "feasible and prudent" standard under § 22a-41. With regard to the second claim, the Superior Court concluded that the commission implicitly had found that there was no feasible and prudent alternative but that it had provided inadequate reasons in support of this finding. The Superior Court then undertook a review of the record and concluded that the commission's "implicit findings" were supported by substantial

evidence. This appeal followed.

On appeal to this court, the plaintiff claims that the Superior Court incorrectly (1) concluded that the requirement of presenting feasible and prudent alternatives under § 22a-41 (a) (2) and (b) (2), and under § 7.5 (f) of the regulations was directory rather than mandatory, and (2) applied the substantial evidence test to review the record of the proceedings before the commission.

I

The plaintiff claims that the Superior Court incorrectly concluded that the requirement of presenting feasible and prudent alternatives under § 22a-41 (a) (2) and (b) (2), and under § 7.5 (f) of the regulations was directory rather than mandatory. Specifically, the plaintiff argues that § 7.5 (f) implements the applicants' statutory burden under § 22a-41 (b), and that it, therefore, cannot merely be directory. In response, the defendants contend that the language of § 7.5 (f) cannot be read as mandatory in light of this court's decision in *Weinstein* v. *Inland Wetlands Agency*, 124 Conn. App. 50, 3 A.3d 167, cert. denied sub nom. 107 *Longshore Lane, LLC* v. *Inland Wetlands Agency*, 299 Conn. 903, 10 A.3d 520 (2010). The defendants also argue that even if they did not comply with § 7.5 (f) of the regulations, the purpose behind that provision was satisfied because the commission considered the alternative of building on the western side of the property and heard expert testimony as to its viability. Consequently, the defendants argue that the commission's decision should only be set aside if the noncompliance with § 7.5 (f) resulted in "material prejudice" to the plaintiff. We agree with the plaintiff.

At the outset we note that the "[r]esolution of the issue presented requires us to review and to interpret the relevant statutory provisions and town regulations. Because the interpretation of . . . [statutes and] regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Citation omitted; internal quotation marks omitted.) *Weinstein* v. *Inland Wetlands Agency*, supra, 124 Conn. App. 55. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambig-

uous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Unistar Properties, LLC* v. *Conservation & Inland Wetlands Commission*, 293 Conn. 93, 105–106, 977 A.2d 127 (2009).

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. . . . A reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision." (Citations omitted; internal quotation marks omitted.) *Weinstein* v. *Inland Wetlands Agency*, supra, 124 Conn. App. 56–57.

Section 7.5 (f) of the regulations provides in relevant part: "All applications shall include the following information in writing or on maps or drawings . . . f. alternatives, including low impact development practices, which would cause less or no environmental impact to wetlands or watercourses and why the alternative as set forth in the application was chosen; all such alternatives shall be diagramed on a site plan or drawing . . . ."

In declining to read § 7.5 (f) of the regulations as mandatory, the Superior Court reasoned that "[t]here is no language in § 7.5 (f) which expressly invalidates any action after nonconformance. Also, the requirement that alternatives be diagramed on a site plan or drawing is clearly designed for the convenience of the commission 'to secure order, system and dispatch' rather than as a matter of substance. For these reasons, the commission's decision is not invalid simply because the applicants did not diagram any alternatives on a site plan or drawing as required by § 7.5 (f)." Although the Superior Court correctly concluded that the requirement to diagram alternatives does not render § 7.5 (f) mandatory, it did not assess the effect of § 22a-41 (b) on § 7.5 (f). In this regard, § 1.5 of the regulations is particularly instructive. That section provides that "[t]he Agency shall enforce the Inland Wetlands and Watercourses Act and shall issue, with terms, conditions, limitations or modifications, *or deny permits for all regulated activities in the Town of New Hartford pursuant to sections 22a-36 to 22a-45, inclusive, of the Connecti-*

*cut General Statutes, as amended.*" (Emphasis added.) Thus, § 1.5 makes clear that § 7.5 (f), which sets forth application requirements for permits, operates in consonance with § 22a-41 (b).

In *Weinstein*, this court reiterated that the "test to be applied in determining whether a statute is mandatory or directory is . . . whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory." (Internal quotation marks omitted.) *Weinstein* v. *Inland Wetlands Agency*, supra, 124 Conn. App. 56. In the present case, the matter of substance relative to § 7.5 (f) is the burden of proof for inland wetlands applications that is set forth in § 22a-41 (b) (2). Section 22a-41 (b) (2) provides in relevant part that "this subdivision shall not be construed to shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity." Our case law is clear that the "evidentiary burden imposed on the applicant to demonstrate that its proposal is the only feasible and prudent alternative will ordinarily require an affirmative presentation to that effect. If only one alternative is presented, the inland wetlands agency can approve the application for a permit only if no other feasible and prudent alternatives exist. In practical terms, this will usually require that the applicant present evidence of more than one alternative to the local agency." (Internal quotation marks omitted.) *Tarullo* v. *Inland Wetlands & Watercourses Commission*, 263 Conn. 572, 580, 821 A.2d 734 (2003); *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 593, 628 A.2d 1286 (1993); see also *River Sound Development, LLC* v. *Inland Wetlands & Watercourses Commission*, 122 Conn. App. 644, 663–64 (commission correctly concluded that applicant had not sufficiently established absence of prudent and feasible alternative), cert. denied, 298 Conn. 920, 4 A.3d 1228 (2010). Additionally, even if the requirements to produce drawings of alternatives is considered directory, that determination does not alter an applicant's burden to present feasible and prudent alternatives. See *Hoffman* v. *Inland Wetlands Commission*, 28 Conn. App. 262, 265 (although applicant need not submit plans or drawings for all possible alternatives, burden of proof concerning feasible and prudent alternatives lies with applicant), cert. denied, 223 Conn. 925, 614 A.2d 822 (1992).

Moreover, our review of the legislative history of Number 87-533, of the 1987 Public Acts, which added subsection (b) to § 22a-41, reveals that the purpose of that subsection was to strengthen the regulatory framework "for the protection of inland wetlands." 30 S. Proc., Pt. 9, 1987 Sess., pp. 3114–15, remarks of Senator Michael Meotti.[5] Specifically, the addition of subsection (b) was meant to establish "a standard, an explicit standard for the first time for DEP and local inland wetlands agencies' decisions, that they must find that a feasible

and prudent alternative to the intrusion of the wetland does not exist. . . . [That] . . . standard . . . goes a long way towards codifying protection of inland wetlands so that they will not be intruded upon as long as a feasible and prudent alternative to the intrusion on the wetlands exists. . . .'' Id., pp. 3115–16. It is clear to us, therefore, that the applicant's burden to prove the absence of a feasible and prudent alternative is reflective of the legislature's intent to protect the inland wetlands of this state and thus a matter of substance. In the present case, because the regulations require the commission to grant or deny applications pursuant to the statutory scheme of § 22a-41; see § 1.5 of the regulations; § 7.5 (f) of the regulations necessarily implements the burden of proof set forth in § 22a-41 (b). Consequently, § 7.5 (f) deals with a ''matter of substance'' in that it carries an applicant's burden of proof under General Statutes § 22a-41 (b); it is, therefore, mandatory and not directory. Additionally, the use of the word ''shall'' in both § 7.5 (f) and § 1.5, further strengthens our conclusion. ''[A]lthough we have often stated [that] [d]efinite words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature . . . we also have noted that the use of the word shall, though significant, does not invariably establish a mandatory duty. . . . [T]he test to apply in determining whether the use of the word shall connotes a mandatory duty, or is merely directory, is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or convenience. . . . If it is a matter of substance, the statutory provision is mandatory.'' (Citations omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 169 Conn. App. 527, 536–37, 151 A.3d 404 (2016), aff'd 328 Conn. 586, A.3d      (2018); see also *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 320, 984 A.2d 676 (2009). Given our conclusion that § 7.5 (f) relates to a matter of substance, the use of the word ''shall'' in that section further accentuates its mandatory nature.

The Superior Court correctly noted that there is no express language in § 7.5 (f) of the regulations that would invalidate any action taken after noncompliance; that, however, is only one of several factors that reviewing courts have, in the past, considered in determining whether a provision is mandatory or directory. See *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 758–59, 758 n.10, 104 A.3d 713 (2014) (listing six factors; see footnote 5 of this opinion; and noting ''[a]lthough we have referred to some of these considerations as 'tests,' we generally have not treated any one consideration as dispositive, and in most cases we have evaluated the relevant language, structure, history, and purpose of the statute in determining whether the duty at issue was mandatory or

directory"). In the present case, the absence of express language invalidating noncompliance with § 7.5 (f) does not militate against the mandatory nature of the requirement that the applicants present feasible and prudent alternatives.

Finally, the defendants' argument that the commission essentially considered the alternative of building on the western side of the property misses the point that it was the applicants' burden to propose less harmful alternatives and to prove that the proposed plan, nonetheless, should be approved. See General Statutes § 22a-41 (a) (2) (alternative must be *less* harmful to wetlands than proposed activity). Because this burden constitutes a matter of substance, the Superior Court incorrectly concluded that the requirement to present alternatives in § 7.5 (f) is directory.

II

The plaintiff also claims that the Superior Court incorrectly applied the substantial evidence test to review the record of the proceedings before the commission because the commission's approval contained explicit, rather than implicit, findings that had been made using an incorrect legal standard. Specifically, the plaintiff argues that our Supreme Court's holding in *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 941 A.2d 917 (2008), forbids, on appeal, a review of the record when an inland wetlands agency makes explicit findings. Because the commission's improper findings in the present case were explicit, the plaintiff argues that the Superior Court erroneously searched the record for substantial evidence in support of what the commission properly should have found.

In response, the defendants contend that the commission did not make an explicit finding, rather its approval of the application constituted an implicit finding under § 22a-41 (b), that a feasible and prudent alternative did not exist. Because that finding was implicit, the defendants argue, the Superior Court did not err in searching the record for substantial evidence in support of it. In so arguing, the defendants rely on our Supreme Court's decision in *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 579, for the proposition that an inland wetlands agency is not required to state explicitly that a reasonable and prudent alternative to the proposed activity does not exist.[6] Consequently, the defendants contend that the Superior Court was entitled to search the record for substantial evidence and to infer a finding that no other feasible and prudent alternative existed.

The defendants also argue that this case is different from *Gibbons*, in which our Supreme Court declined, on appeal, to review the record for substantial evidence in support of a completely different reason from that which the commission had stated. They assert that, unlike *Gibbons*, the only testimony in the present case

in support of the commission's implicit finding was regarded by the commission to be credible. The defendants therefore argue that relying on that testimony to reach the finding the commission properly should have made does not invade the commission's fact-finding mission.

The precise question before us, then, is whether the Superior Court properly reviewed the record for substantial evidence in light of the stated findings of the commission. We conclude that it did not.

"Whether the substantial evidence test was applied properly by the trial court in its review of an inland wetlands agency's decision is a question of law over which our review is plenary. . . . [T]he reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Inland Wetlands & Watercourses Agency*, 130 Conn. App. 69, 75, 22 A.3d 37, cert. denied, 303 Conn. 908, 32 A.3d 961, 962 (2011). "When an administrative agency specifically states its reasons, the court should go no further because it could reasonably be inferred that this was the extent of its findings. To go beyond those stated reasons invades the factfinding mission of the agency by allowing the court to cull out reasons that the agency may not have found to be credible or proven." (Internal quotation marks omitted.) *Gibbons* v. *Historic District Commission*, supra, 285 Conn. 771.

We disagree with the defendants that the present case, like *Samperi*, involves an implicit finding by the commission. In *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 580–81, the inland wetlands zoning commission approved the building of a residential subdivision on a wetlands area. The commission did not, however, state expressly that there was no feasible and prudent alternative to the proposed activity. On appeal to our Supreme Court, the plaintiffs claimed that the commission was required under § 22a-41 (b) to create a record showing that it had considered each and every alternative. The court rejected that argument, noting that "the local inland wetlands agency is required only to manifest in some verifiable fashion that it has made a finding of no feasible and prudent alternative. Although the agency may manifest its finding explicitly,

in those cases in which its finding is implicit in its decision, the reviewing court has the responsibility to search the record for substantial evidence in support of the agency's action." Id., 592–93. The court then concluded that "the [commission]'s decision to approve the permit constituted an implicit finding that no other feasible and prudent alternatives existed besides the [proposed activity]." Id., 596.

After carefully reviewing *Samperi* in light of the defendants' argument, we are not persuaded that it controls the present case. Specifically, *Samperi* does not stand for the principle that a reviewing court may examine the record when an agency's explicit findings are insufficient. Rather, it clarifies that in "cases in which [an agency's] finding is *implicit in its decision*, the reviewing court has the responsibility to search the record for substantial evidence in support of the agency's action." (Emphasis added.) Id., 593. In *Samperi*, the agency's approval of the permit, in the absence of any other explanation, constituted an implicit finding that there was no reasonable or prudent alternative to the proposed activity. In the present case, by contrast, the commission supported its decision with several express findings. As to reasonable and prudent alternatives, the commission noted first that "[t]he intervenors have failed to prove that [the] applicants are proposing activities that are reasonably likely to unreasonably pollute, impair, or destroy the public trust in the air, water, or other natural resources of the State of Connecticut." The commission then specifically found that the *plaintiff* had "failed to prove that requiring the applicants to develop on the western portion of the property is a feasible and prudent alternative to the proposed activities." Because these findings were explicit, *Samperi* is inapposite.

Instead, the present case is controlled by our Supreme Court's decision in *Gibbons*. In that case, the court expressly concluded that "[w]hen an administrative agency specifically states its reasons, the court should go no further because it could reasonably be inferred that this was the extent of its findings. To go beyond those stated reasons invades the factfinding mission of the agency by allowing the court to cull out reasons that the agency may not have found to be credible or proven." (Internal quotation marks omitted.) *Gibbons* v. *Historic District Commission*, supra, 285 Conn. 771. More recently, this court has observed that "[a] careful reading of *Gibbons* reveals that a trial court considering a zoning appeal is required to search the entire record to find a legal basis for a zoning board's decision only when *no reason* has been given for granting a variance or special exception." (Emphasis in original.) *Michler* v. *Planning & Zoning Board of Appeals*, 123 Conn. App. 182, 188 n.3, 1 A.3d 1116 (2010).

Here, the commission did state its reasons for approv-

ing the application. Specifically, the commission, in its eighteenth enumerated finding, stated that the *plaintiff* had failed to prove that her proposed alternative was feasible and prudent. As we concluded in part I of this opinion, that finding is contrary to settled law that the applicant bears the burden of presenting feasible and prudent alternatives, and then showing why the proposed activity should be permitted.[7] In an effort to harmonize the commission's reasons and its explicit findings, the court regarded the reasons as "inadequate" and reviewed the record for substantial evidence in support of what the commission properly should have found—whether the *applicants* had proven that no feasible and prudent alternative existed. To support its review of the record, the Superior Court relied on *Stankiewicz* v. *Zoning Board of Appeals*, 211 Conn. 76, 556 A.2d 1024 (1989), overruled in part, *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 771, 941 A.2d 917 (2008), where our Supreme Court had affirmed this court's decision that a review of the record for substantial evidence is permissible when a commission provides inadequate reasons for its decision.

In *Gibbons*, however, our Supreme Court expressly considered and rejected this approach, limiting review of the record only to the specifically stated reasons of an agency. See *Gibbons* v. *Historic District Commission*, supra, 285 Conn. 771. In doing so, the court expressly overruled *Stankiewicz* to the extent it permitted such review. Id., 771 ("[t]o the extent that our decision in *Stankiewicz* conflicts with this principle, it is hereby overruled"). Consequently, in the present case, the Superior Court should not have searched the record after it found that the commission had provided inadequate reasons. We also are not persuaded by the defendants' argument that the Superior Court's review of the record did not invade the commission's fact-finding mission because the commission already had found credible the only testimony in the record that would support its implicit finding that there was no feasible and prudent alternative. This argument essentially restates the approach that was forbidden in *Gibbons*, i.e., a review of the record for evidence in support of something other than the commission's explicit findings. Because the Superior Court's search of the record for substantial evidence exceeded the scope of review permitted in *Gibbons*, it was improper.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.

[1] As the Schifferts' codefendant, the commission filed a notice adopting their brief. This opinion will refer to the Schifferts as the applicants and to the Schifferts and the commission collectively as the defendants.

[2] General Statutes § 22a-41 (a) provides in relevant part: "In carrying out the purposes and policies of sections 22a-36 to 22a-45a, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts

and circumstances, including but not limited to . . . (2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses . . . ."

General Statutes § 22a-41 (b) (2) provides: "In the case of an application which is denied on the basis of a finding that there may be feasible and prudent alternatives to the proposed regulated activity which have less adverse impact on wetlands or watercourses, the commissioner or the inland wetlands agency, as the case may be, shall propose on the record in writing the types of alternatives which the applicant may investigate provided this subdivision shall not be construed to shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity."

Section 7.5 of the regulations provides in relevant part: "All applications shall include the following information in writing or on maps or drawings . . . f. alternatives, including low impact development practices, which would cause less or no environmental impact to wetlands or watercourses and why the alternative as set forth in the application was chosen; all such alternatives shall be diagramed on a site plan or drawing . . . ."

[3] Because we agree with the plaintiff's first two claims, we do not reach her third claim, raised in the alternative, that there was no substantial evidence to support the commission's approval of the application.

[4] The plaintiff also filed a notice of intervention pursuant to General Statutes § 22-19.

[5] "Our prior cases have looked to a number of factors in determining whether such requirements are mandatory or directory. These include: (1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether the requirement at issue relates to a matter of substance or one of convenience; (4) *whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and the full legislative scheme evince an intent to impose a mandatory requirement;* (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance." (Emphasis added.) *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 758–59, 104 A.3d 713 (2014).

[6] In *Samperi* v. *Inland Wetlands Agency*, supra, 266 Conn. 595–96, our Supreme Court stated: "As long as a search of the record reveals the basis for the agency's decision . . . the reviewing court must infer that the local wetlands agency made a finding that the applicant's alternative was the feasible and prudent alternative."

[7] It appears that the commission conflated the plaintiff's status as both an abutter under § 22a-41 and intervenor under § 22a-19. While intervention pursuant to § 22a-19 might place a burden of proof on the plaintiff, she had no such burden in her status as an abutter under § 22a-41. The applicants' burden under § 22a-41 (b), on the other hand, is mandatory and must be complied with.