******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS T. ANDERSON ET AL. *v.* REEL
HOSPITALITY, LLC, ET AL.
(AC 47799)

Seeley, Westbrook and Norcott, Js.

*Syllabus*

The plaintiffs, who had been employed as servers at a restaurant owned
and operated by the defendants, appealed from the trial court's judgment
granting in part the defendants' motion for summary judgment on the count
of their complaint alleging violations of the applicable wage regulation (§ 31-
62-E3). They claimed that the court improperly determined that a violation
of the recordkeeping requirements in § 31-62-E3 of the regulations did not,
by law, give rise to a private right of action. *Held*:

The trial court properly granted in part the defendants' motion for summary
judgment, as this court's conclusion in *Nettleton* v. *C & L Diners, LLC*
(219 Conn. App. 648) that the requirements set forth in § 31-62-E3 of the
regulations are directory and do not give rise to a private cause of action
was dispositive of the plaintiffs' appeal.

Argued May 27—officially released July 8, 2025

*Procedural History*

Action to recover damages for the defendants' alleged
violations of minimum wage laws and regulations, and
for other relief, brought to the Superior Court in the
judicial district of Hartford, and transferred to the Complex Litigation Docket; thereafter, the court, *Noble, J.*,
granted in part the motions for summary judgment filed
by the plaintiffs and the defendants and rendered judgment thereon, from which the plaintiffs appealed to this
court. *Affirmed*.

*Richard E. Hayber*, for the appellants (plaintiffs).

*Allison P. Dearington*, with whom were *David R.
Golder* and *Danielle Sturgeon*, for the appellees (defendants).

*Opinion*

SEELEY, J. The plaintiffs, Thomas T. Anderson[1] and
Rosemarie Taylor, appeal from the summary judgment

---

[1] Thomas T. Anderson, who was formerly known as Thomas T. McDougle,
subsequently obtained a change of name decree from the Hartford Probate
Court and is now known as Cirilla Theodore Anderson.

rendered by the trial court in favor of the defendants, Reel Hospitality, LLC; Dakota of Rocky Hill, LLC;[2] and David Melincoff. In this certified class action, which was brought by the plaintiffs, individually and on behalf of others similarly situated, and alleged violations of state minimum wage regulations; see General Statutes § 31-60 (b); see also Regs., Conn. State Agencies § 31-62-E1 et seq. (March 8, 2015);[3] the court rendered summary judgment in favor of the defendants with respect to count one of the plaintiffs' amended complaint, which alleged that the defendants had violated § 31-62-E3 of the Regulations of Connecticut State Agencies (regulations) by, inter alia, failing to record on a weekly basis the amount claimed as a tip credit for each server as a separate item in the wage record. On appeal, the plaintiffs claim that the court improperly determined, as a matter of law, that a violation of the recordkeeping requirements in § 31-62-E3 of the regulations does not give rise to a private cause of action. We disagree and, accordingly, affirm the judgment of the court.

The following undisputed factual and procedural history, as set forth by the court, *Noble, J.*, in its memorandum of decision granting the defendants' motion for summary judgment in part as to count one of the plaintiffs' amended complaint, or as established by the record, and construed in the light most favorable to the

[2] Dakota of Rocky Hill, LLC, is a subsidiary of Reel Hospitality, LLC.

[3] "Pursuant to Connecticut wage laws, an employer may claim a credit for gratuities received by service employees in the restaurant industry as a percentage of the minimum fair wage (tip credit) it would otherwise be required to pay, and the Labor Commissioner . . . acting through the Department of Labor . . . is tasked with adopting regulations regarding the tip credit. See General Statutes § 31-60 (b); see also Regs., Conn. State Agencies § 31-62-E1 et seq. (March 8, 2015)." (Footnote omitted.) *Nettleton* v. *C & L Diners, LLC*, 219 Conn. App. 648, 652, 296 A.3d 173 (2023). Unless otherwise indicated, all citations and references to § 31-62-E1 et seq. of the Regulations of Connecticut State Agencies are to the version of the regulations updated to March 8, 2015, which were in effect at the time of the underlying events.

plaintiffs as the nonmoving parties, is relevant to our resolution of this appeal. "This action[4] was commenced by the plaintiffs on January 21, 2020,[5] and an amended complaint was filed on February 24, 2020 . . . . In their [amended] complaint, the plaintiffs allege the following facts. They were servers in a restaurant in Rocky Hill . . . called Dakota's Steakhouse (restaurant).[6] Taylor worked in the restaurant from October, 2015, through approximately early 2018. Anderson worked in the restaurant from August, 2015, through July, 2019. The job duties of both [of the] plaintiffs as servers involved serving food and beverages to patrons at tables and booths in the restaurant area. The plaintiffs allege that they and other servers performed significant amounts of nonservice duties without the possibility for earning tips for such work and were not paid the minimum wage rate for this nonservice work. [Reel Hospitality, LLC, and Dakota of Rocky Hill, LLC] . . . are the owners and operators of the restaurant and the employers of its employees, including the plaintiffs. . . . Melincoff is the owner of Reel Hospitality, [LLC], and Dakota [of Rocky Hill, LLC], manages and controls both, and is the employer of all servers who work at the restaurant, including the plaintiffs. In their [amended] complaint, the plaintiffs sought certification to sue as representative parties on behalf of a class of servers

[4] Prior to commencing the underlying class action in the Superior Court, the plaintiffs initially had commenced an action against Dakota of Rocky Hill, LLC, in the United States District Court for the District of Connecticut, alleging claims under federal and state minimum wage laws. See *McDougle* v. *Dakota of Rocky Hill, LLC*, Docket No. 3:17-CV-00245 (SRU), 2019 WL 4761446 (D. Conn. September 30, 2019) (denying plaintiffs' motion for class certification). On January 6, 2020, the District Court dismissed the plaintiffs' federal claims without prejudice to the plaintiffs refiling their state law claims in state court.

[5] The record reflects that Reel Hospitality, LLC, and Melincoff were served with process on January 21, 2020, but that Dakota of Rocky Hill, LLC, was not served until January 30, 2020.

[6] The restaurant is owned and operated by the defendants.

similarly situated pursuant to Practice Book §§ 9-7 and 9-8.

"In the first count of their [amended] complaint, the plaintiffs allege [that] the defendants violated [§ 31-62-E3 (b) and (c) of the regulations][7] by failing to record on a weekly basis the amount claimed as a tip credit[8] for each server 'as a separate item in the wage record . . . and by failing to obtain signed weekly tip statements from the servers attesting that [the server] has received in gratuities the amount claimed as credit for part of the minimum fair wage.' . . . This count contains the only claims against Melincoff and Reel Hospitality, [LLC]. In the second count, the plaintiffs allege that Dakota [of Rocky Hill, LLC] violated [§ 31-62-E4 of the regulations][9] because it assigned nonservice work to its servers without segregating the time spent on

[7] Section 31-62-E3 of the Regulations of Connecticut State Agencies provides in relevant part: "Gratuities shall be recognized as constituting a part of the minimum fair wage when all of the following provisions are complied with . . . (b) the amount received in gratuities claimed as credit for part of the minimum fair wage shall be recorded on a weekly basis as a separate item in the wage record even though payment is made more frequently, and (c) each employer claiming credit for gratuities as part of the minimum fair wage paid to any employee shall obtain weekly a statement signed by the employee attesting that he has received in gratuities the amount claimed as credit for part of the minimum fair wage. Such statement shall contain the week ending date of the payroll week for which credit is claimed. . . ."

[8] As discussed in footnote 3 of this opinion, a "tip credit" is "a credit [an employer may claim] for gratuities received by service employees in the restaurant industry as a percentage of the minimum fair wage . . . it would otherwise be required to pay . . . ." *Nettleton* v. *C & L Diners, LLC,* 219 Conn. App. 648, 652, 296 A.3d 173 (2023); see also *Rodriguez* v. *Kaiaffa, LLC,* 337 Conn. 248, 259 n.11, 253 A.3d 13 (2020).

[9] Section 31-62-E4 of the Regulations of Connecticut State Agencies, which was repealed effective September 24, 2020, provides: "If an employee performs both service and non-service duties, and the time spent on each is definitely segregated and so recorded, the allowance for gratuities as permitted as part of the minimum fair wage may be applied to the hours worked in the service category. If an employee performs both service and non-service duties and the time spent on each cannot be definitely segregated and so recorded, or is not definitely segregated and so recorded, no allowances for gratuities may be applied as part of the minimum fair wage."

nonservice work from the time spent on service work and failed to pay its servers the full minimum wage for all [nonservice] hours worked. The plaintiffs allege that both violations resulted in their being underpaid because they did not receive the full minimum wage for the time they performed nonservice duties. The defendants filed an answer with special defenses in which they allege[d] that the plaintiffs' [amended] complaint fail[ed] to state a cause of action upon which relief [could] be granted . . . . On April 8, 2021, the court, *Moukawsher, J.*, certified a class action of servers who worked in the restaurant." (Citation omitted; footnotes added; footnote omitted.)

On November 10, 2021, the plaintiffs filed a motion for summary judgment accompanied by a supporting memorandum of law and several exhibits, and, on January 6, 2022, the defendants filed a motion for summary judgment accompanied by a supporting memorandum of law and several exhibits. In their motion for summary judgment, the defendants argued that they were entitled to summary judgment as to both counts of the amended complaint and asserted, inter alia, that, because § 31-62-E3 (b) and (c) of the regulations is directory rather than mandatory, the regulation does not create a private cause of action.[10] The plaintiffs and the defendants each filed a memorandum in opposition to the other party's motion for summary judgment on January 27, 2022. In their objection, the plaintiffs argued in relevant part that no courts have adopted the position that § 31-62-E3 of the regulations does not create a private cause of action and that the plaintiffs have a private right of action to enforce this regulation.

---

[10] The plaintiffs asserted in their motion for summary judgment, which is not at issue in this appeal, that the defendants had failed to comply with §§ 31-62-E3 and 31-62-E4 of the regulations and asked the court to render summary judgment in their favor on their claims brought pursuant to those regulations.

The court heard argument on the cross motions for summary judgment at a remote hearing held on March 28, 2022, and took the matters under advisement. On July 26, 2022, the court issued a memorandum of decision granting the defendants' motion for summary judgment in part as to count one of the amended complaint alleging that the defendants had violated § 31-62-E3 (b) and (c) of the regulations, and granting, in part, the plaintiffs' motion for summary judgment as to count two of the amended complaint alleging that Dakota of Rocky Hill, LLC, had violated § 31-62-E4 of the regulations.[11] In so doing, the court conducted a detailed legal analysis to determine whether the requirements in the pertinent regulation are mandatory or directory and, after determining that they are directory, concluded, as a matter of law, that a violation of the requirements in § 31-62-E3 of the regulations does not give rise to a private cause of action. This appeal followed.

The plaintiffs' sole claim on appeal is that the trial court improperly concluded, as a matter of law, that a violation of the requirements in § 31-62-E3 of the regulations does not give rise to a private cause of action. In support of their claim, they assert that (1) General Statutes (Supp. 2016) § 31-68 (a) (1)[12] and § 31-62-E3 of the regulations establish a private right of enforcement for violations of the recordkeeping requirements in the regulation, (2) certain language in Public Act 22-134[13]

---

[11] The court's decision rendering summary judgment in favor of the plaintiffs as to count two of the amended complaint is not at issue in this appeal.

[12] "General Statutes (Supp. 2016) § 31-68 (a) (1) provides for a private cause of action '[i]f any employee is paid by his or her employer less than the minimum fair wage . . . to which he or she is entitled under [the minimum wage statutes] or by virtue of a minimum fair wage order . . . .' " *Nettleton* v. *C & L Diners, LLC*, 219 Conn. App. 648, 664 n.11, 296 A.3d 173 (2023).

[13] Public Act 22-134, § 1, amended subsection (d) of § 31-60 by adding subdivision (4), which provides: "Notwithstanding any other law or regulation, any claim brought under this subsection, section 31-68 as it relates to gratuities as part of the minimum wage or section 31-62-E3 of the regulations of Connecticut state agencies filed after September 24, 2022, shall be adjudi-

demonstrates an intention of the legislature for § 31-62-E3 of the regulations to give rise to a private cause of action, (3) this court, in *Nettleton* v. *C & L Diners, LLC*, 219 Conn. App. 648, 296 A.3d 173 (2023), did not conclude that § 31-62-E3 of the regulations does not give rise to a private cause of action, and (4) the trial court improperly determined that § 31-62-E3 of the regulations is directory.[14] The defendants respond by asserting, inter alia, that, in *Nettleton* "[t]his [c]ourt analyzed the same issue and the same arguments and soundly decided that there is no private right of action under [§ 31-62-E3 of the regulations]," and that one panel of this court cannot overrule the decision of another panel in the absence of en banc consideration of the plaintiffs' appeal. We agree with the defendants that our resolution of this appeal is controlled by *Nettleton.*

cated, solely, under section 31-60-2 of the regulations of Connecticut state agencies effective on September 24, 2020, and any amendments thereto."

The amendment, thus, now expressly provides for a private right of action. To the extent that the plaintiffs' principal appellate brief can be interpreted as raising a claim that Public Act 22-134 applies retroactively, we deem any such claim abandoned in light of the plaintiffs' express clarification in their appellate reply brief that they "never made that argument" and, therefore, that the issue should be "disregarded by this court." See, e.g., *McDonnell* v. *Roberts*, 224 Conn. App. 388, 398 n.7, 312 A.3d 1103 (2024) (declining to consider briefed arguments in support of claim that was "expressly abandoned" by appellant at oral argument); *Ross* v. *Commissioner of Correction*, 217 Conn. App. 286, 289 n.1, 288 A.3d 1055 (same), cert. denied, 346 Conn. 915, 290 A.3d 374 (2023).

[14] Although case law concerning whether a statute gives rise to a private cause of action often involves a claim that such a cause of action is implicit in a statute; see, e.g., *Haworth Country Club, LLC* v. *United Bank*, 226 Conn. App. 665, 681, 319 A.3d 146 (determination of whether statute implicitly gives rise to cause of action "is dependent on a three part test" (internal quotation marks omitted)), cert. denied, 350 Conn. 914, 324 A.3d 791 (2024); the plaintiffs do not claim that § 31-62-E3 of the regulations implicitly gives rise to a private cause of action. Rather, they claim that the express language of § 31-68 (a) stating that an employee who is paid "less than the minimum fair wage to which he or she is entitled . . . by virtue of a wage order . . . shall recover in a civil action," "specifically provides" for such a cause of action by way of the pertinent regulations.

As a preliminary matter, we set forth our standard of review. "The general principles governing a trial court's decision on a motion for summary judgment are well established. On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . In deciding a motion for summary judgment, [i]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such

issues exist." (Citation omitted; internal quotation marks omitted.) *Schimenti Construction Co., LLC* v. *Schimenti*, 217 Conn. App. 224, 234–35, 288 A.3d 1038 (2023).

Next, we set forth the relevant background regarding the tip credit regulations, as summarized by this court in *Nettleton*: " '[In 1958 . . . the [Department of Labor (department)] issued a revised wage order for restaurant employees that for the first time recognized that gratuities could count toward the minimum wage under certain circumstances. . . . The 1958 wage order contained definitions of service and nonservice restaurant employees . . . that are substantially identical to those presently contained in § 31-62-E2 (c) and (d) of the Regulations of Connecticut State Agencies. . . . It also provided that [g]ratuities received *by a service employee* may be allowed as part of the minimum fair wage . . . . [I]n 1980, the legislature replaced the discretionary phrase [the Labor Commissioner (commissioner)] *may* recognize, as part of the minimum fair wage, gratuities . . . for persons employed in the hotel and restaurant industry . . . General Statutes (Rev. to 1979) § 31-60 (b); with the mandatory language [the commissioner] *shall* recognize . . . .' " (Emphasis in original.) *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 665–66.

"Currently, '[§] 31-60 (b) begins by authorizing the commissioner to adopt such regulations . . . as may be appropriate to carry out the purposes of [the minimum wage statutes]. It concludes by providing that [t]he commissioner may provide, in such regulations, modifications of the minimum fair wage herein established . . . for such special cases or classes of cases as the commissioner finds appropriate to prevent curtailment of employment opportunities, avoid undue hardship and safeguard the minimum fair wage herein

established.' . . . Thus, 'the statutory language reasonably can be read to delegate to the department the authority to carve out exceptions to the tip credit in order to accomplish the remedial purpose of the minimum wage law, which is to require the payment of fair and just wages.' . . .

"We now turn to the regulations that were in effect when the plaintiff[s] [were] employed by the defendant[s]. Section 31-62-E3 of the regulations provided in relevant part: 'Gratuities shall be recognized as constituting a part of the minimum fair wage when all of the following provisions are complied with . . . (b) the amount received in gratuities claimed as credit for part of the minimum fair wage shall be recorded on a weekly basis as a separate item in the wage record even though payment is made more frequently, and (c) each employer claiming credit for gratuities as part of the minimum fair wage paid to any employee shall obtain weekly a statement signed by the employee attesting that he has received in gratuities the amount claimed as credit for part of the minimum fair wage. Such statement shall contain the week ending date of the payroll week for which credit is claimed. Gratuities received in excess of twenty-three percent of the minimum fair wage . . . per hour, need not be reported or recorded for the purpose of this regulation.' "[15] (Citations omitted.) Id., 666–67.

---

[15] We note that, after the commencement of this action, the department "posted . . . amended tip credit regulations, effective September 24, 2020. See Regs., Conn. State Agencies § 31-62-E1 et seq. (September 24, 2020). The department repealed § 31-62-E4 of the regulations and added § 31-62-E3a of the regulations, which provides that an employer is not required to segregate a service employee's time spent performing nonservice duties unless the employee performs such nonservice duties for more than two hours or for more than 20 percent of the employee's shift, whichever is less. The department also amended § 31-62-E2 of the regulations, defining 'duties incidental to such service' as the performance of twenty-three specific tasks; see Regs., Conn. State Agencies § 31-62-E2 (d) (September 24, 2020); and § 31-62-E3 of the regulations, changing the recordkeeping requirements set forth in subsections (b) and (c) by replacing the weekly reporting of

We turn next to an examination of this court's decision in *Nettleton*[16] concerning § 31-62-E3 of the regulations. Similar to the present case, the plaintiff in *Nettleton*, who worked as a server at a restaurant operated by the defendant employer, brought an action based on violations of, inter alia, the recordkeeping requirements of § 31-62-E3 of the regulations. See id., 652. One of the issues raised in that appeal was whether the trial court properly rendered summary judgment in favor of the plaintiff on the claims she brought under § 31-62-E3 of the regulations. Id., 664. As to that issue, the defendant employer specifically argued that "§ 31-62-E3 of the regulations is directory and, therefore, its noncompliance [with that provision] does not invalidate the tip credit and give rise to a private cause of action." Id., 667. In addressing the issue, this court first noted that, in light of the language of § 31-68 (a), "[w]hether the plaintiff was paid less than the minimum fair wage to which she was entitled 'by virtue of' § 31-62-E3 of the regulations turns on whether § 31-62-E3's recordkeeping requirements are mandatory or directory. That is, if the recordkeeping requirements are directory, the defendant's noncompliance would not invalidate the tip credit and, therefore, the plaintiff would not have been paid less than the minimum fair wage to which she was entitled." Id., 664 n.11.

This court then construed "the wage statutes and regulations" pursuant to the rules governing statutory interpretation, for the purpose of determining whether the recordkeeping requirements in § 31-62-E3 of the regulations are mandatory or directory. Id., 664–65. In doing so, this court applied the six factors endorsed by

gratuities with reporting 'on a daily, weekly, or bi-weekly basis.' See Regs., Conn. State Agencies § 31-62-E3 (September 24, 2020)." (Footnote omitted.) *Nettleton* v. *C & L Diners*, *LLC*, supra, 219 Conn. App. 659–60.

[16] We observe that the trial court's decision, which is dated July 26, 2022, was made prior to, and thus without the benefit of, this court's decision in *Nettleton*, which was released on June 6, 2023.

our Supreme Court in *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 757, 104 A.3d 713 (2014).[17] After applying those factors, this court concluded that, "in balancing all the relevant factors . . . the recordkeeping requirements in § 31-62-E3 (b) and (c) of the regulations are directory and, therefore . . . the defendant's noncompliance with those requirements does not invalidate the tip credit and does not give rise to a private cause of action." *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 678.

We conclude that this court's reasoning and decision in *Nettleton* is precisely on point and therefore controls the disposition of this appeal. The plaintiffs argue that this court's decision in *Nettleton* did not hold that violations of the recordkeeping requirements in § 31-62-E3 of the regulations "can never form the basis of a private right of action" because the decision was "limited to the facts" of that case and, pursuant to the separation of powers doctrine, the "judiciary simply does not have

---

[17] These six factors are: "(1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether the requirement at issue relates to a matter of substance or one of convenience; (4) whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and the full legislative scheme evince an intent to impose a mandatory requirement; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance." (Internal quotation marks omitted.) *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 668. In the present case, the plaintiffs claim on appeal that the trial court improperly applied these factors in reaching its determination that no private right of action exists. In light of our determination that *Nettleton* controls our resolution of this appeal, we need not address this claim.

that power."[18] On the basis of our review of *Nettleton*, we are convinced that this court's conclusion that "*the recordkeeping requirements in § 31-62-E3 (b) and (c) of the regulations are directory*"; (emphasis added) *Nettleton* v. *C & L Diners*, *LLC*, supra, 219 Conn. App. 678; was not limited to the facts of that case. Indeed, that conclusion does not contain any qualifying language indicating that it was limited to the particular circumstances of that case, and this court explicitly stated that "we agree[d] with the defendant's claim that the recordkeeping requirements are directory . . . ."[19] Id., 678 n.14. Moreover, this court's determination in *Nettleton* that noncompliance with the recordkeeping requirements of § 31-62-E3 of the regulations "*does not give rise to a private cause of action*"; (emphasis added) id., 678; was predicated on an interpretation of the regulation and a legal conclusion that such requirements are directory. See id., 668–78. That determination, therefore, was not limited to the facts of *Nettleton* in that it was based on a legal analysis of whether the pertinent regulation is directory or mandatory. See

[18] To the extent that the plaintiffs assert that *Nettleton* did not hold that § 31-62-E3 of the regulations does not give rise to a private cause of action, their assertion has no merit. To the extent that the plaintiffs claim that, pursuant to the separation of powers doctrine, the judiciary does not have the power to decide that a regulation does not give rise to a private cause of action, any such claim is inadequately briefed because the plaintiffs have failed to cite any relevant legal authority or to provide any legal analysis in support of this claim. We, therefore, decline to review it. See, e.g., *State ex rel. Dunn* v. *Burton*, 229 Conn. App. 267, 310–11, 327 A.3d 982 (2024) (declining to review claim when defendant's brief contained no meaningful analysis, no citations to relevant legal principles, and no analysis of how facts of case related to applicable case law).

[19] Although the relevant analysis in *Nettleton* included some discussion of the facts, it did so only with respect to two of the six factors that the court applied in determining that the recordkeeping requirements of § 31-62-E3 of the regulations are directory. See *Nettleton* v. *C & L Diners*, *LLC*, supra, 219 Conn. App. 674–78. Our review of *Nettleton* convinces us that the resolution of the relevant issue therein was based not on its particular facts but on whether the recordkeeping requirements of § 31-62-E3 of the regulations are directory or mandatory. See id., 664 n.11.

*Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 790, 961 A.2d 349 (2008) (recognizing that determination of whether statutory requirement "is mandatory or directory . . . raises a question of statutory interpretation"); *State* v. *Reynolds*, 264 Conn. 1, 86, 836 A.2d 224 (2003) ("[t]he process of statutory interpretation in no way implicates the fact-finding function of the jury but, rather, presents *a pure question of law*" (emphasis added)); *Starble* v. *Inland Wetlands Commission*, 183 Conn. App. 280, 286, 192 A.3d 428 (2018) (acknowledging that "the interpretation of . . . [statutes and] regulations presents a question of law" (internal quotation marks omitted)); see also *Sosa* v. *Martin County*, 57 F.4th 1297, 1301 (11th Cir.) ("If we treated every factual distinction with a precedential decision as necessarily material, the doctrine of precedent would lose most of its function. . . . Judges would be freed from the requirement that they apply the law, so long as they could unearth any factual discrepancy between binding caselaw and the case they wanted to decide a different way." (Citation omitted.)), cert. denied,      U.S.    , 144 S. Ct. 88, 217 L. Ed. 2d 19 (2023); *Robinson* v. *Diamond Housing Corp.*, 463 F.2d 853, 862 (D.C. Cir. 1972) ("Every case is 'limited to its facts,' if by that phrase one means that the court based its judgment on the facts presented to it. But most cases are also decided with reference to some more general normative principle which extends beyond the specific circumstances of the case before the court. Indeed, it is the existence of such broader norms which distinguishes a decision which is principled and rational from one which is ad hoc and arbitrary.").

In summary, the plaintiffs' sole claim in this appeal is that the court improperly granted the defendants' motion for summary judgment in part as to count one of the amended complaint and determined, as a matter

of law, that violations of the recordkeeping requirements of § 31-62-E3 of the regulations do not give rise to a private cause of action. A similar claim was raised in *Nettleton*, in which this court made a legal determination that no such private cause of action exists under the regulations, which are directory. We therefore conclude, on the basis of *Nettleton*, that the trial court properly determined that the requirements set forth in § 31-62-E3 of the regulations are directory and do not give rise to a private cause of action. See *Nettleton* v. *C & L Diners, LLC*, supra, 219 Conn. App. 678. This determination is dispositive of the plaintiffs' appeal.

Because *Nettleton* is controlling, we need not reach the other arguments raised by the plaintiffs in support of their claim regarding § 31-62-E3 of the regulations, which, in effect, would require us to revisit or to overrule *Nettleton*.[20] The plaintiffs did not seek en banc review of their appeal, and "it is well established that *one panel of this court cannot overrule the precedent established by a previous panel's holding.* . . . As we have often stated, this court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. [That] may be accomplished only if the appeal is heard en banc. . . . Prudence, then dictates that this panel decline to revisit such requests." (Emphasis added; internal quotation marks omitted.) *Aviles* v. *Barnhill*, 217 Conn. App. 435, 450, 289 A.3d 224 (2023); see *In re A. H.*, 226 Conn. App. 1, 22, 317 A.3d 197 ("[t]he respondent did not seek en banc review of his appeal; accordingly, we are unable to overturn our own precedent" (footnote omitted)), cert. denied,

---

[20] The plaintiffs do not expressly contend that we should revisit or overrule *Nettleton*. Nonetheless, by asking this court to engage in the exact same legal analysis of § 31-62-E3 of the regulations and to reach a conclusion that would contradict that of a different panel of this court, the plaintiffs, in effect, are asking us to revisit or overrule this court's decision in *Nettleton*. For example, in their appellate reply brief, the plaintiffs explicitly argue that "*Nettleton* misapplied the *Electrical Contractors, Inc.* factors."

349 Conn. 918, 317 A.3d 784 (2024); *State* v. *White*, 215 Conn. App. 273, 305, 283 A.3d 542 (2022) ("[b]ecause this court is bound to follow the precedent from . . . other panels of this court, the defendant's claim that this court should overrule binding precedent must be rejected"), cert. denied, 346 Conn. 918, 291 A.3d 108 (2023). We therefore conclude that the trial court properly determined, as a matter of law, that a violation of the recordkeeping requirements in § 31-62-E3 of the regulations does not give rise to a private cause of action.[21]

Accordingly, the court properly granted the defendants' motion for summary judgment in part as to count one of the amended complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

_____

---

[21] Because we agree with the defendants that *Nettleton* controls our resolution of this appeal, it is not necessary for us to reach any of the alternative grounds for affirming the trial court's decision raised by the defendants.